UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRYSLER LLC, a Delaware limited liability
company,

          Plaintiff/Counter-Defendant,

vs.

       Hon. Sean F. Cox

       Case No. 08-14592

GETRAG TRANSMISSION
MANUFACTURING LLC, a Delaware limited
liability company; GETRAG GETRIEBE-UND
ZAHNRADFABRIK HERMANN
HAGENMEYER GMBH & CIE KG, a German
limited partnership,

          Defendants/Counter-Plaintiffs.

---

James P. Feeney (P13335)
Paul L. Nystrom (P57067)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
(248) 203-0700

Hugh R. McCombs, Jr.
Michael J. Gill
Robert E. Entwisle
**MAYER BROWN**
71 S. Wacker Drive
Chicago, Illinois 60606
(312) 701-3757
*Attorneys for Plaintiff*

Scott T. Seabolt (P55890)
Jeffrey S. Kopp (P59485)
Gary E. Steinbauer (P69789)
**FOLEY & LARDNER LLP**
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-4443
(313) 234-7100
*Attorneys for Defendant Getrag Transmission
Manufacturing LLC and co-counsel for Getrag
Getriebe-Und Zahnradfabrik Hermann
Hagenmeyer GmbH & Cie Kg*

R. Jeffrey Pollock (P63957)
**MCDONALD HOPKINS LLC**
600 Superior Ave., East, Suite 2100
Cleveland, Ohio 44114
(216) 348-5400
*Attorney for Getrag Getriebe-Und
Zahnradfabrik Hermann Hagenmeyer GmbH &
Cie Kg*

---

## DEFENDANTS' MOTION TO DISMISS
## COUNT III OF PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(6) AND 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

GETRAG Transmission Manufacturing LLC ("GG LLC") and GETRAG Getriebe –und Zahnradfabrik Hermann Hagenmeyer GmbH & Cie KG ("GG", collectively "GETRAG"), by their undersigned counsel,[1] move under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for the dismissal of Count III of Chrysler LLC's ("Chrysler") Complaint because Chrysler has failed to state a claim for fraudulent misrepresentation on which relief can be granted. This motion is supported by the facts and law set forth in the accompanying brief. There was a conference between attorneys in which counsel for GETRAG explained the nature of this Motion and its legal basis, but concurrence was not obtained.

---

[1] On October 30, 2008, undersigned counsel submitted a Notice of Substitution with a proposed Order of substitution, by which counsel for Defendant GG LLC would assume the representation of Defendant GG. Pending entry of the Order, counsel for GG LLC is appearing as co-counsel for GG.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: /s/ Scott T. Seabolt _____
    Scott T. Seabolt (P55890)
    Jeffrey S. Kopp (P59485)
    Gary E. Steinbauer (P69789)
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-4443
(313) 234-7100
*Attorneys for Defendant Getrag Transmission
Manufacturing LLC and co-counsel for Defendant
Getrag Getriebe-Und Zahnradfabrik Hermann
Hagenmeyer GmbH & Cie KG*

**MCDONALD HOPKINS LLC**
    R. Jeffrey Pollock (P63957)
600 Superior Ave., East, Suite 2100
Cleveland, Ohio 44114
(216) 348-5400
*Attorney for Defendant Getrag Getriebe-Und
Zahnradfabrik Hermann Hagenmeyer GmbH & Cie
KG*

Dated: October 30, 2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRYSLER LLC, a Delaware limited liability
company,

                Plaintiff/Counter-Defendant,

                                   Hon. Sean F. Cox

vs.

                                   Case No. 08-14592

GETRAG TRANSMISSION
MANUFACTURING LLC, a Delaware limited
liability company; GETRAG GETRIEBE-UND
ZAHNRADFABRIK HERMANN
HAGENMEYER GMBH & CIE KG, a German
limited partnership,

                Defendants/Counter-Plaintiffs.

| | |
|---|---|
| James P. Feeney (P13335)<br>Paul L. Nystrom (P57067)<br>**DYKEMA GOSSETT PLLC**<br>39577 Woodward Avenue, Suite 300<br>Bloomfield Hills, Michigan 48304<br>(248) 203-0700<br><br>Hugh R. McCombs, Jr.<br>Michael J. Gill<br>Robert E. Entwisle<br>**MAYER BROWN**<br>71 S. Wacker Drive<br>Chicago, Illinois 60606<br>(312) 701-3757<br>*Attorneys for Plaintiff* | Scott T. Seabolt (P55890)<br>Jeffrey S. Kopp (P59485)<br>Gary E. Steinbauer (P69789)<br>**FOLEY & LARDNER LLP**<br>500 Woodward Ave., Suite 2700<br>Detroit, Michigan 48226-4443<br>(313) 234-7100<br>*Attorneys for Defendant Getrag Transmission*<br>*Manufacturing LLC and co-counsel for Getrag*<br>*Getriebe-Und Zahnradfabrik Hermann*<br>*Hagenmeyer GmbH & Cie Kg*<br><br>R. Jeffrey Pollock (P63957)<br>**MCDONALD HOPKINS LLC**<br>600 Superior Ave., East, Suite 2100<br>Cleveland, Ohio 44114<br>(216) 348-5400<br>*Attorney for Getrag Getriebe-Und*<br>*Zahnradfabrik Hermann Hagenmeyer GmbH &*<br>*Cie Kg* |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(6) AND 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

STATEMENT OF QUESTIONS PRESENTED ........................................................... iii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY .................... iv

INTRODUCTION ............................................................................................................ 1

I.      STATEMENT OF FACTS ..................................................................................... 2
        A.      The Written Agreements ......................................................................... 2
                1.      Memorandum of Understanding ................................................. 2
                2.      The Transmission Supply Agreement ....................................... 3
                3.      The Financing Options Agreement ............................................ 4
                4.      The Other Written Agreements .................................................. 7
        B.      Chrysler's Fraudulent Misrepresentation Claim .................................... 7

II.     STANDARD OF REVIEW .................................................................................. 10

III.    ARGUMENT ....................................................................................................... 10
        A.      Because The FOA And The TSA Each Contain A Merger Clause,
                Chrysler Cannot State A Claim For Fraudulent Misrepresentation Based
                On An Extrinsic Statement ................................................................... 10
        B.      Neither A Statement Of Opinion Nor A Promise Of Future Performance
                Can Form The Basis Of A Fraud Claim ............................................... 14
        C.      Chrysler Has Not Alleged That GETRAG Acted With Actual Knowledge
                That The Alleged Statements Were False When Made ....................... 15
        D.      Chrysler's Fraud Claim Is Not Stated With The Requisite Particularity ............. 16

IV.     CONCLUSION .................................................................................................... 17

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Advocacy Org. for Patients and Providers v. Auto. Club Ins. Ass'n,*
   176 F.3d 315 (6th Cir. 1999) ..............................................................................10, 16

*Bell Atl Corp v. Twombly,*
   127 S. Ct. 1955 (2007) ...........................................................................................9

*Bovee v. Coopers & Lybrand CPA,*
   272 F.3d 356 (6th Cir. 2001) ................................................................................9

*Cloverdale Equip. Co. v. Simon Aerials, Inc.,*
   869 F.2d 934 (6th Cir. 1989) ...............................................................................12

*Cook v. Little Caesars Enters., Inc.,*
   210 F.3d 653 (6th Cir. 2000) ...............................................................................13

*Dahlmann v. Sulcus Hospitality Techs., Corp.,*
   63 F. Supp. 2d 772 (E.D. Mich. 1999)........................................................ 10-12, 15

*Dedvukaj, Inc. v. Equilon Enters., LLC,*
   301 F. Supp. 2d 664 (E.D. Mich. 2004) ...............................................................13

*DirecTV, Inc. v. Cavanaugh,*
   321 F. Supp. 2d 825 (E.D. Mich. 2003)................................................................16

*Erickson's Flooring & Supply Co. v. Tembec, Inc.,*
   212 Fed. Appx. 558 (6th Cir. 2007) (attached hereto as *Ex. K*)................................15

*Jessup-Morgan v AOL,*
   20 F. Supp. 2d 1105 (E.D. Mich. 1998) ...............................................................16

*Krear v. Malek,*
   961 F. Supp. 1065 (E.D. Mich. 1997)...................................................................16

*Morgan v. Church's Fried Chicken,*
   829 F.2d 10 (6th Cir. 1987) ...................................................................................9

*Vennittilli v. Primerica, Inc.,*
   943 F. Supp. 793 (E.D. Mich. 1996)......................................................................17

STATE CASES

*Foreman v Foreman,*
    266 Mich. App. 132, 701 N.W. 2d 167 (2005)........................................................................14

*Johnson v. Botsford Gen. Hosp.,*
    278 Mich. App. 146, 748 N.W. 2d 907 (2007) .....................................................................14

*Marrero v McDonnel Douglas Capital Corp.,*
    200 Mich. App. 438, 505 N.W. 2d 275 (1993)....................................................................14

*Pitsch v. ESE Mich., Inc.,*
    233 Mich. App. 578, 593 N.W. 2d 565 (1999).............................................................10, 15

*Schuler v Am. Motors Sales Corp.,*
    39 Mich. App. 276, 197 N.W. 2d 493 (1972)......................................................................13

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................16

Federal Rule of Civil Procedure Rule 9(b) ...................................................................................16

DETR_950053.1

## STATEMENT OF QUESTIONS PRESENTED

I.   Whether the valid merger clauses in the parties' written agreements preclude Chrysler from relying on extrinsic statements in support of its fraud claim.

Defendants say "yes."

II.   Whether the alleged misrepresentation that forms the basis of Chrysler's fraud claim – "that financing *would* not be a problem" – is nothing more than a statement of opinion or a promise of future performance and therefore insufficient to state a claim for fraudulent misrepresentation under Michigan law.

Defendants say "yes."

III.   Whether Chrysler's fraudulent misrepresentation claim fails to state a claim for which relief can be granted because it does not allege that GETRAG had "actual knowledge" that the statement was false when made.

Defendants say "yes."

IV.   Whether Chrysler's failure to state who made the alleged representation, when it was made, how it was made, and to whom it was made violates the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Defendants say "yes."

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

FED. R. CIV. P. 12(b)(6)

FED. R. CIV. P. 9(b)

*UAW-GM Human Resource Ctr. V. KSL Recreation Corp.*, 228 Mich. App. 486, 501, 579 N.W. 2d 411 (1998)

*Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 505 N.W. 2d 275 (1993)

*Foreman v. Foreman*, 266 Mich. App. 132, 701 N.W. 2d 167 (2005)

*Pitsch v. ESE Mich., Inc.*, 233 Mich. App. 578, 593 N.W. 2d 565 (1999)

iv

## INTRODUCTION

This case involves Chrysler LLC's termination of a $500 million-plus transmission project with Defendants Getrag Transmission Manufacturing LLC ("GG LLC") and Getrag Getriebe-Und Zahnradfabrik Hermann Hagenmeyer GmbH & Cie KG ("GG") (collectively referred to as "GETRAG"). Chrysler's stated reasons for terminating the agreements are a pretext. Through the filing of this lawsuit, Chrysler is attempting to deflect blame and obscure the true motives behind its termination of the project, which termination had absolutely nothing to do with anything GETRAG did or failed to do. Contemporaneous with this motion, GETRAG is filing a counterclaim in which its seeks to recover, among other things, $500 million-plus in costs and expenses that Chrysler is obligated to reimburse GETRAG under the most generous reading of the parties' agreements and the most charitable view of Chrysler's conduct.

In this motion, GETRAG is seeking dismissal of Count III in Chrysler's complaint for fraudulent misrepresentation. In Count III, Chrysler claims that it was "induced" to enter into a Financing Options Agreement and a Transmission Supply Agreement based on GETRAG's alleged representation that "financing [for the project] would not be a problem." (Compl. ¶ 55.) Under Michigan law, this allegation, even if true, is insufficient to state a claim for fraudulent misrepresentation for at least four reasons:

1.  Under Michigan law, where a written agreement contains a merger clause, as the written agreements do here, a plaintiff cannot rely on extrinsic statements as the basis for a fraud claim. Here, the alleged statement that "financing would not be a problem" is an extrinsic statement that is directly contrary to the terms of the written agreements which plainly contemplated circumstances in which financing could be a problem and could not be obtained.

2.  A statement of opinion or a promise of future performance – that "financing *would* not be a problem" – cannot form the basis of a fraud claim.

3.  Chrysler has not alleged that GETRAG acted with actual knowledge that this alleged statement was false when made.

1

4.   The complaint does not include the requisite particulars of who made this alleged statement, when it was made, how it was made or to whom it was made.

For these reasons and the reasons more fully set forth below, GETRAG respectfully requests that the Court dismiss Count III of Chrysler's complaint with prejudice.

## I.   STATEMENT OF FACTS[1]

### A.   The Written Agreements

#### 1.   Memorandum of Understanding

In February 2007, GG and Chrysler entered into a Memorandum of Understanding (the "MOU"), a copy of which is attached as *Ex. A*.[2] The purpose of the MOU was to consider the joint development of a manufacturing facility to build dual clutch transmissions ("DCTs"), which would be supplied to Chrysler for use in its vehicles (the "Project"). (Compl. ¶1). According to its terms, the MOU was to remain in effect until July 31, 2007, and would be superseded by definitive transaction agreements if and when GETRAG and Chrysler decided to move forward with the Project. (*Id*). Ultimately, the Parties agreed to prolong the period for authorized spending by GETRAG while they continued to negotiate terms of the definitive

---

[1] Unless otherwise indicated, the statement of facts is derived from Chrysler's complaint and the written agreements referenced therein. *See, e.g., Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999) (holding that it was proper to consider documents not included, but referenced, in the complaint that were central to the plaintiff's claims when deciding whether dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure without converting the motion into a summary judgment decision). GETRAG does not agree with Chrysler's characterization of the facts as set forth in the complaint, but GETRAG assumes those facts to be true for purposes of this motion, as required by the applicable standard of review.

[2] The agreements referenced herein contain confidential commercial information that, GETRAG submits, should not be made a matter of public record. Contemporaneous with the filing of this Motion, GETRAG also is filing a motion for leave to file the exhibits to this Motion under seal. Therefore, the exhibits are not being attached at this time but will be provided to the Court under seal upon entry of the requested Order.

transaction agreements. (Compl. ¶2). Throughout this period, GETRAG incurred substantial costs in connection with the Project. (*Id*).

## 2.    The Transmission Supply Agreement

On or about March 11, 2008, GETRAG and Chrysler entered into a series of definitive transaction agreements for the construction and operation of a facility in Tipton, Indiana (the "Tipton Plant") that would manufacture DCTs. (Compl. ¶3). Among the definitive transaction agreements are the Transmission Supply Agreement (the "TSA") and the Financing Options Agreement ("FOA"). A copy of the TSA is attached as *Ex. B*, and a copy of the FOA is attached as *Ex. C*.

As acknowledged in the TSA, GG "formed GG LLC for the purposes of, among other things, designing, manufacturing, assembling and supplying the Chrysler DCTs pursuant to the terms and conditions of [the TSA]." (*Ex. B*, p.1, Recital C). The TSA was intended to govern: "(1) the design, construction, equipping and operation by GG LLC of the Tipton Plant, and (2) the design, manufacture, assembly and supply by GG LLC, and the purchase by Chrysler, of DCTs." (*Ex. B*, p.1, Recital F).

The TSA included an initial term running from the execution date through the end of Chrysler's 2018 model year, plus a renewal term through the end of Chrysler's 2020 model year. (*Ex. B*, p.73, §21.1). The TSA obligated Chrysler to purchase DCTs exclusively from GG LLC up to certain annual volumes through the 2020 model year. (*Ex. B*, p.17, §2.1). The TSA contemplated total volumes of 7,091,600 units purchased exclusively from GG LLC. (Exhibit 2.1(a) to the TSA, included with *Ex. B*). The TSA obligated GG LLC to capacitize the Tipton Plant to meet Chrysler's requirements for DCTs and obligated GG LLC initially to allocate 100% of the capacity at the Tipton Plant to the production of Chrysler DCTs. (*Ex. B*, p.17, §2.1;

3

p.29, §6.1). The start of production under the TSA was scheduled for October 2009. (*Ex. B*, p.31, §7.1).

Under the TSA, GG LLC agreed to purchase $245 million in machinery, equipment and tooling that was to be owned by Chrysler. (*Ex. B*, p.20, §3.3). Chrysler agreed then to reimburse GG LLC for the cost of the Chrysler-owned machinery, equipment and tooling. (*Ex. B*, p.20, §3.3). Chrysler also agreed to reimburse GG LLC for $60 million in tooling supplied by third-party vendors. (*Ex. B*, p.23, §3.4).

Under the TSA, GG LLC agreed to "use its good faith efforts to obtain, from banks or other financial institutions, senior debt financing with respect to the supply of Chrysler DCTs to Chrysler." (*Ex. B*, p.25, §3.7). The debt financing was to be used by GG LLC for the design, construction, equipping, and operation of the Tipton Plant.

Importantly, the TSA contained the following merger clause:

> This Agreement and the Services Agreement, the LLC Agreement, the Parent Guarantee and the Confirmation Agreement (collectively, the "Other Agreements"), taken together, (i) constitute the entire agreement, and supersede all prior agreements and understandings, both written and oral, between the Parties with respect to the matters contemplated hereby (including the Memorandum of Understanding, dated February 9, 2007 between Chrysler and GG) ...

(*Ex. B*, p.90, §23.15).

### 3.    The Financing Options Agreement

Also on March 11, 2008, GG, GG LLC (collectively "GETRAG") and Chrysler executed the Financing Options Agreement ("FOA"). (*Ex. C*). Under the FOA, GETRAG agreed to "use its good faith efforts to take, or cause to be taken, all actions and do, or cause to be done, all things necessary, proper or advisable to arrange for" the senior debt financing in the principal

4

amount of $300 million on then-prevailing market terms and otherwise on fair and reasonable terms. (*Ex. C*, p.5, §2.1; *see also Ex. C*, p.2, §1.1 (definition of "Debt Financing")).

The FOA contemplated a financing whereby the TSA would constitute the only collateral pledged to secure the loan. (*Ex. A-1* to FOA, included with *Ex. C*) (describing "Collateral" as "Supply Agreement only. No pledge of assets"). As such, both parties recognized that GETRAG's ability to obtain financing would depend in large part on Chrysler's financial condition and, moreover, the perceived financial ability of Chrysler to meet its future purchase obligations under the TSA. If the banks perceived that Chrysler would not be able to meet its future purchase obligations under the TSA, then the collateral for the loan would be worthless and the banks would not make the loan.

Recognizing that Chrysler's financial condition was a critical factor in GETRAG's ability to obtain financing, the FOA obligated Chrysler to make certain disclosures and to provide certain assurances. For example, upon request, Chrysler was required to supply detailed financial information to potential providers of debt financing, including financial statements, company and operational overviews, business strategies, business plan reviews, automotive industry overviews, separation overviews, key investment considerations, and other key financial data. (*Ex. C*, p.5, §2.2(b); *see also* Exhibit A-2 to the FOA, included with *Ex. C*). Chrysler also agreed to provide adequate assurances to potential providers of the debt financing with respect to Chrysler's obligation to reimburse GG LLC for the Chrysler-owned machinery, equipment and tooling. (*Ex. C*, p.6, §2.2(b)(ii)).

The FOA contemplated a variety of circumstances under which financing might be obtained. For example, Section 2.4 of the FOA contemplated "Debt Financing at a Total Cost of 10% or Less." (*Ex. C*, p.7). Section 2.5 contemplated "Debt Financing at a Total Cost in Excess

5

of 10% But Not in Excess of 15%." (*Ex. C*, p.7-9). Section 2.6 contemplated "Debt Financing at a Total Cost in Excess of 15%." (*Ex. C*, p.9-11).

Importantly, the FOA also contemplated circumstances in which, despite GETRAG's good faith efforts, financing could not be obtained. (*Ex. C*, p.11, §2.7) ("Failure to Obtain Debt Financing"). Indeed, under the FOA, GG LLC could deliver to Chrysler a "Failure Notice" indicating that despite its good faith efforts, GG LLC "has not received (or believes, in its good faith judgment, that it is not reasonably likely to receive) a Firm Commitment for the Debt Financing." (*Ex. C*, p.11, §2.7(a)). Under such circumstances, the FOA granted Chrysler the opportunity to pursue Alternative Debt Financing. (*Ex. C*, p.11, §2.7(a)). If Chrysler elected to pursue Alternative Debt Financing, Chrysler had the right to authorize GG LLC to continue paying cash expenses in order to keep the Project moving forward and to avoid a work stoppage. (*Ex. C*, p.11, §2.7(b)).

In the event that financing was not obtained, Chrysler agreed to backstop GETRAG's investment in and financial commitment to the Project. (*Ex. C*, p.14, §2.10(b) ("Chrysler will reimburse GG LLC for the costs and expenses specified in, and in accordance with the process set forth in, Exhibit D-1 attached hereto") [underline in original]; (*see also Ex. C*, p.16, §2.11(a) ("Chrysler will reimburse GG LLC for the costs and expenses specified in, and in accordance with the process set forth in, Exhibit D-1 attached hereto") [underline in original]). As of March 2008, Chrysler had specifically authorized costs and expenses through July 2008 in excess of $437 million. (Exhibit D-2 to FOA, included with *Ex. C*).

Like the TSA, the FOA contained a merger clause:

> This Agreement, the Supply Agreement and the Other Agreements
> set forth the entire agreement between the Parties related to the
> subject matter hereof, and supersede all prior agreements and
> understandings, both written an oral, between the Parties with

6

> respect thereto (including the Memorandum of Understanding, dated February 9, 2007, between Chrysler and GG (the "MOU"), but excluding the Reimbursement Agreement, dated May 3, 2007, between Chrysler and GG LLC, as amended relating to certain parcels of land in Tipton, Indiana.)

(*Ex. C*, p.21, §4.4).

### 4.    The Other Written Agreements

The FOA contemplated that GG would contribute a minimum of $140 million in cash to the capital of GG LLC pursuant to a Parent Guarantee Agreement, including $20 million in 2007, $106 million in 2008 and $14 million in 2009. (*Ex. C*, p.1, third "Whereas" clause). A copy of the Parent Guarantee is attached as *Ex. D*. The parties also executed the following additional agreements in connection with the FOA and the TSA:

- The Services Agreement, by and between Chrysler and GG LLC (the "Services Agreement") (*Ex. E*).

- The Limited Liability Company Agreement of Getrag Chrysler Transmission LLC, between Chrysler and GG LLC (the "LLC Agreement") (*Ex. F*).

- The Confirmation Agreement, by and among Chrysler, GG, GG LLC, GETRAG Transmissions Corporation and GETRAG FORD Transmissions GmbH (the "Confirmation Agreement") (*Ex. G*).

Each of these agreements contained a merger clause similar to those contained in the TSA and the FOA. (*Ex. D*, §23; *Ex. E*, §19; *Ex. F*, §16.7; *Ex. G*, §5.11).

### B.    Chrysler's Fraudulent Misrepresentation Claim

The parties did not obtain Debt Financing during the time contemplated by the FOA. On September 22, 2008, GG LLC delivered to Chrysler a Failure Notice pursuant to Section 2.7(a) of the FOA, a copy of which is attached as *Ex. H*. The Failure Notice stated that GG LLC believed it was not reasonably likely to receive a firm commitment for the Debt Financing, as contemplated in Section 2.7(a) of the FOA, due to the fact that Chrysler had failed to provide

adequate assurances to the potential lenders as contemplated by Section 2.2(b)(ii) of the FOA. (*Ex. H*).

Chrysler responded to GG LLC's Failure Notice on September 25, 2008. A copy of Chrysler's response is attached as *Ex. I*. In the response, Chrysler disputed GETRAG's claim that Chrysler failed to provide adequate assurances. Chrysler further stated "that Getrag and GG LLC have breached their obligations under, and made misrepresentations in, the [Financing Options] Agreement and the Transmission Supply Agreement." (*Ex. I*).

After receiving Chrysler's response, GETRAG continued working toward obtaining a mutually acceptable Debt Financing package. On October 7, 2008, without any advance notice or warning of any kind, and before purporting to issue a termination notice, Chrysler initiated this lawsuit.[3] In the complaint, Chrysler claims that the failure to obtain Debt Financing was GETRAG's fault, that GETRAG breached its obligations under both the TSA and the FOA, and that GETRAG made fraudulent misrepresentations upon which Chrysler allegedly relied in entering into the TSA and the FOA. Through this lawsuit, Chrysler is seeking, among other things, to avoid its half-billion dollar (or more) reimbursement obligations under the FOA.

GETRAG denies the salient allegations made by Chrysler and, in particular, denies the allegation that the failure to obtain Debt Financing was due to something that GETRAG did or failed to do. For purposes of this motion, however, the Court does not need to determine which party was responsible for the failure to obtain Debt Financing. Rather, for purposes of this motion, the Court need only consider whether Chrysler has properly stated a claim for fraudulent

---

[3]   Chrysler did not purport to issue a termination notice until October 17, 2008, ten days after it initiated this lawsuit.

DETR_950053.1

misrepresentation upon which relief can be granted.    In this regard, Chrysler's fraudulent

misrepresentation claim states as follows:

> 54.    Defendants' ability to secure financing was a critical and material concern to Chrysler in entering into the FOA and the TSA with Getrag and GG LLC.    Chrysler repeatedly conveyed to defendants its concerns about defendants' abilities to obtain financing in the six months preceding the signing of the FOA.

> 55.    In response, *defendants repeatedly represented to Chrysler that financing would not be a problem.*    Defendants even signed a best-efforts comfort letter expressly stating that they would provide transparency in the financing process.

> 56.    Defendants made these representations with the purpose of causing Chrysler to sign the FOA in order to ensure that they were reimbursed for past and future expenditures, some of which were not reimbursable under the MOU, if the Project was not completed due to a failure to obtain Debt Financing and to obtain higher pricing than was agreed to in the MOU if the Projected were completed.

> 57.    Chrysler reasonably relied on defendants' false and material representations.    As a direct and proximate result of these representations by defendants, Chrysler has been damaged in an amount to be proved at trial. [emphasis added].

As will be explained below, these allegations do not properly state a claim for fraudulent

misrepresentation for at least four reasons.    First, under Michigan law, where a written

agreement contains a merger clause, a plaintiff cannot rely on an extrinsic statement as the basis

for a fraud claim, particularly where, as here, the alleged extrinsic statement is directly contrary

to the terms of the written agreement.    Second, a statement of opinion or a promise of future

performance – that "financing *would* not be a problem" – cannot form the basis of a fraud claim.

Third, Chrysler has not alleged that GETRAG acted with actual knowledge that this alleged

statement was false when made.    Fourth, the complaint does not include the requisite particulars

of who made this alleged representation, when it was made, how it was made or to whom it was

made.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when the plaintiffs have failed to state a claim upon which relief can be granted.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), courts construe the complaint in the light most favorable to the plaintiff, accepting all factual allegations as true.  *Bovee v. Coopers & Lybrand CPA*, 272 F.3d 356, 360 (6th Cir. 2001).  However, the Court need not accept as true "legal conclusions or unwarranted factual inferences."  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *see also*, *Bell Atl Corp v. Twombly*, 127 S. Ct. 1955, 1961 (2007) (a plaintiff's obligation to provide "'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted).  "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'"  *Advocacy Org. for Patients and Providers v. Auto. Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999) (quoting *Scheid v Fanny Farmer Candy Shops, Inc*, 859 F.2d 434, 436 (6th Cir. 1988)).

## III.   ARGUMENT

### A.   Because The FOA And The TSA Each Contain A Merger Clause, Chrysler Cannot State A Claim For Fraudulent Misrepresentation Based On An Extrinsic Statement

Under Michigan law, the elements for a claim of fraudulent misrepresentation are: 1) the defendant made a material representation; 2) the representation was false; 3) defendant knew the representation was false when made or made it recklessly without knowledge of its truth or falsity; 4) defendant made the representation with the intention that it should be acted upon by the plaintiff; 5) the plaintiff acted in reliance upon it; and 6) the plaintiff suffered injury as a result.  *Pitsch v. ESE Mich., Inc.*, 233 Mich. App. 578, 599, 593 N.W.2d 565 (1999); *Dahlmann*

*v. Sulcus Hospitality Techs., Corp.*, 63 F. Supp. 2d 772, 776-77 (E.D. Mich. 1999) (applying Michigan law).

In *UAW-GM Human Resource Center v. KSL Recreation Corporation*, the Michigan Court of Appeals considered the effect of a merger clause on a plaintiff's attempt to introduce "extrinsic evidence, demonstrating that the defendant's representative made false representations upon which the plaintiff relied to his detriment." 228 Mich. App. 486, 501, 579 N.W. 2d 411 (1998). In that case, the court held that the contract's merger clause barred the admission of this evidence and precluded the fraud claim:

> [A] contract with a merger clause nullifies all antecedent claims...In the context of a contract that included a merger clause, parol evidence regarding false representations would vary the terms of the contract...For these reasons, *we hold that when the parties include an integration clause in their contract, it is conclusive and parol evidence is not admissible* to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete 'on its face...

*Id.* at 502 (emphasis added) (internal citations omitted).

Thus, in Michigan, the existence of a merger clause limits permitted fraud claims to a small class of claims involving fraud with respect to the merger clause itself: "[W]hen a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, *i.e.* fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause." *Id.* at 503. The justification for the rule lies in the stability that it lends to written contracts and recognition of the fact that "disappointed parties will always have a great incentive to describe circumstances in ways that escape the explicit terms of their contracts." *UAW-GM Human Res. Ctr.*, 228 Mich. App. at 492 (quoting Fried, *Contract as Promise* (Cambridge: Harvard University Press, 1981), p 60).

11

In *UAW-GM*, the plaintiff claimed they had agreed that a hotel they were using for a convention would have union employment, even though such an agreement was not included in the contract itself. Consequently, the plaintiff claimed that the contract was fraudulently induced based on this representation. The Michigan Court of Appeals rejected this fraud claim because of the merger clause in the agreement: "[T]he merger clause would nullify any such agreement not included in the letter of agreement." *Id.* at 504.

In *Hamade v Sunoco Inc.*, a gas station owner alleged that he was fraudulently induced into a franchise agreement because of an oral representation that Sunoco would not authorize any other stations within a certain distance. The court in that case, citing *UAW-GM*, viewed such a representation as "expressly nullified by the integration clause." 271 Mich. App. at 170. It held that "[i]f the integration clause is valid, fraud based on this representation will have no effect on the validity of the contract . . . .Plaintiff must demonstrate that the fraud in question invalidated the integration clause itself." *Id.* Since the plaintiff could not show that he was misled into believing that the agreement had clauses that it in fact did not, or that he was induced to forget about the inclusion of terms that he had requested, the plaintiff's fraud claims failed. *Id.*; *see also Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 941 (6th Cir. 1989) (dismissing fraud claims, noting "this court is not empowered 'to make a different contract for the parties or to look at extrinsic testimony to determine their intent when the words used by them are clear and unambiguous and have a definite meaning").

Here, the TSA and the FOA each contain a merger clause stating that each agreement "set forth the *entire* agreement between the Parties related to the subject matter hereof, and *supersede all prior agreements and understandings, both written and oral*, between the Parties with respect thereto." (*Ex. B*, p. 90, § 23.15; *Ex. C*, p. 11, § 4.4) [emphasis added]. Chrysler has not alleged

12

that it was misled regarding the existence of the merger clause in either the TSA or the FOA. Therefore, Chrysler cannot rely on an alleged extrinsic statement as the basis for its fraud claim.

The same reasoning applies to the "comfort letter"[4] allegedly sent by GETRAG before the parties signed the TSA and the FOA. (*See* Compl. ¶55). According to Chrysler's Complaint, the "comfort letter" was sent on February 5, 2008, which was before the TSA and the FOA were signed. (Compl. ¶23). By the express terms of the merger clause, the TSA and the FOA "superseded" the comfort letter, among other things. Therefore, Chrysler cannot rely on the comfort letter as the basis for its fraudulent misrepresentation claim.

Furthermore, Chrysler is using the alleged extrinsic statement in an attempt to vary the unambiguous terms of the FOA. The FOA plainly contemplated circumstances in which GETRAG could not obtain Debt Financing. Indeed, several sections of the FOA and multiple exhibits to the FOA were dedicated to describing the rights and obligations of the parties in the event GETRAG did not obtain Debt Financing. Yet, Chrysler's fraud claim is premised on the alleged statement "that financing would *not* be a problem," which is directly contrary to what was plainly contemplated by the FOA. As the Michigan Court of Appeals has held, "Plaintiff cannot show a misrepresentation by ignoring a part of the information supplied to him, and then later claim he was defrauded because he was not told of the facts which he chose to ignore." *Schuler v Am. Motors Sales Corp.*, 39 Mich. App. 276, 279, 197 N.W. 2d 493 (1972).

Finally, as a matter of law, it was unreasonable for Chrysler to rely on an alleged extrinsic statement and then sign a series of written agreements stating just the opposite. As the Sixth Circuit has stated, "[r]eliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement." *Cook v. Little Caesars Enters.*,

---

[4] A copy of the "comfort letter" referenced in Chyrsler's complaint is attached as *Ex. J.*

*Inc.*, 210 F.3d 653, 658 (6th Cir. 2000) (holding that signing of agreement with merger clause precludes a finding of reasonable reliance) (citing *3 P.M., Inc. v. Basic Four Corp.*, 591 F. Supp. 1350, 1366 (E.D. Mich. 1984)); *see also Dedvukaj, Inc. v. Equilon Enters., LLC*, 301 F. Supp. 2d 664, 671 (E.D. Mich. 2004) (same).

In sum, because the TSA and the FOA each contain a valid merger clause, and because the alleged extrinsic statement is directly contrary to the plain terms of the TSA and the FOA, Chrysler cannot state a claim for fraudulent misrepresentation under Michigan law.

### B. Neither A Statement Of Opinion Nor A Promise Of Future Performance Can Form The Basis Of A Fraud Claim

Even if the extrinsic statements were not superseded by a series of fully integrated written agreements, the extrinsic statements alleged by Chrysler still would not provide a proper basis for a fraud claim. It is well-established under Michigan law that "[a]n action for fraudulent misrepresentation must be predicated upon a statement of past or existing fact." *Marrero v. McDonnel Douglas Capital Corp.*, 200 Mich. App. 438, 444, 505 N.W. 2d 275, 278 (1993). Future promises that are contractual in nature are not statements of past or existing fact under Michigan law. *Id.* Simply stated, "[a] mere broken promise does not constitute fraud, nor is it evidence of fraud." *Id.* Similarly, the general rule in Michigan is that "honest expressions of opinion may not be regarded as fraudulent." *Foreman v Foreman*, 266 Mich. App. 132, 142, 701 N.W. 2d 167, 175 (2005); *see also Johnson v. Botsford Gen. Hosp.*, 278 Mich. App. 146, 153, n.1, 748 N.W. 2d 907 (2007) ("Expressions of opinion are not false statements of independently verifiable facts.").

Here, the alleged statement that "financing *would* not be a problem" is not a statement of past or existing fact. At best, it is a statement of opinion regarding a future event. Even

DETR_950053.1

assuming GETRAG made such a statement (which GETRAG does not concede), it would not provide a proper basis for a fraud claim.

The same reasoning applies to the "comfort letter." The comfort letter did not contain any statements of past or existing fact. (*Ex. J*). Rather, the comfort letter, like the TSA and the FOA, contained statements of future performance. (*Ex. J* ("GETRAG will use its best efforts to assist its affiliate GETRAG Transmission Manufacturing LLC ("GG LLC') obtain $300 million of third party debt financing ...")) As a matter of law, such statements cannot form the basis of a fraud claim.

### C.    Chrysler Has Not Alleged That GETRAG Acted With Actual Knowledge That The Alleged Statements Were False When Made

It is beyond dispute that to state a claim for fraud under Michigan law a plaintiff must allege that the defendant knew the alleged representation was false when it was made or that the alleged representation was made recklessly, without any knowledge of its truth and as a positive assertion. *See Pitsch.*, 233 Mich. App. at 599 (dismissing fraud claims where plaintiffs could not show, among other things, that defendant "knew" alleged representation was false when made); *Erickson's Flooring & Supply Co. v. Tembec, Inc.*, 212 Fed. Appx. 558, 563 (6th Cir. 2007) (same) (unpublished) (attached hereto as *Ex. K*); *Dahlmann*, 63 F. Supp. 2d at 777-78 (same). Here, as set forth in its entirety above, Chrysler's fraud count does not include an allegation that GETRAG made the alleged statement that "financing would not be a problem" with actual knowledge that the statement was false, or made the alleged statement recklessly without any knowledge of its truth. Without an allegation of actual knowledge, Chrysler cannot state a claim.

Though not alleged in connection with its fraud claim, Chrysler alleges in other parts of its Complaint that GETRAG made certain statements in the written agreements themselves that

15

GETRAG "knew or should have known" were false when made. (*See* Compl., ¶40). Even if alleged in connection with Chrysler's fraud claim, the allegation that GETRAG "knew *or should have known*" is not sufficient to state a claim for fraudulent misrepresentation under Michigan law. *See, e.g., Pitsch*, 233 Mich. App. at 599. Unless Chrysler can allege that GETRAG made a false representation with actual knowledge that the representation was false when made, or made the alleged misrepresentation recklessly, without any knowledge of its truth and as a positive assertion, Chrysler cannot state a claim for fraud.

### D.    Chrysler's Fraud Claim Is Not Stated With The Requisite Particularity

Even if Chrysler could properly state a claim for fraudulent misrepresentation based on the alleged extrinsic statement that "financing would not be a problem," the claim still should be dismissed due to the lack of particularity. Rule 9(b) of the Federal Rules of Civil Procedure provides, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Failure to state a fraud claim with particularity constitutes failure to state a claim." *DirecTV, Inc. v. Cavanaugh,* 321 F. Supp. 2d 825, 835 (E.D. Mich. 2003). Stating fraud with particularity requires "a plaintiff, at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Advocacy Org.,* 176 F.3d at 322; *Jessup-Morgan v AOL*, 20 F. Supp. 2d 1105, 1109 (E.D. Mich. 1998) (stating that "a plaintiff must at a minimum allege the time, place and contents of the alleged misrepresentations upon which he relied.") Set forth in enumerated fashion, the Sixth Circuit requires that allegations of fraud "specif[y] 1) the parties and the participants to the alleged fraud; 2) the representations made; 3) the nature in which the statements are alleged to be misleading or false; 4) the time, place and content of the representations; 5) the fraudulent

scheme; 6) the fraudulent intent of the defendants; 7) reliance on the fraud; and 8) the injury resulting from the fraud." *Krear v. Malek,* 961 F. Supp. 1065, 1069 (E.D. Mich. 1997).

In assessing whether Chrysler has satisfied the particularity requirements of Federal Rule 9(b), it is important to bear in mind the purposes underlying the Rule: "1) it ensures that allegations are specific enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; 2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs – a 9(b) claimant must know what his claim is when he files; and 3) it seeks to protect defendant from unfounded charges of wrongdoing which injure their reputations and goodwill." *Vennittilli v. Primerica, Inc.*, 943 F. Supp. 793, 798 (E.D. Mich. 1996). Each of these purposes is implicated here.

As mentioned above, the only allegedly false statement cited in support of its fraudulent misrepresentation claim is that "defendants repeatedly represented to Chrysler that financing would not be a problem." (Compl. ¶55). Yet nowhere in the complaint does Chrysler allege who made this statement, when it was made, to whom it was made or how it was made. GETRAG is entitled to know – and Chrysler is obligated to allege – with particularity each false statement allegedly made by GETRAG, when it was made, to whom it was made and how it was made. In the absence of such particularized allegations, the allegations are not specific enough to inform GETRAG of the act of which Chrysler complains. Accordingly, Count III for fraudulent misrepresentation should be dismissed.

## IV.    CONCLUSION

For the reasons stated above, GETRAG respectfully requests that the Court grant its motion and dismiss Count III of Chrysler's complaint with prejudice.

17

Respectfully submitted,

**FOLEY & LARDNER LLP**


By: /s/ Scott T. Seabolt _____
Scott T. Seabolt (P55890)
Jeffrey S. Kopp (P59485)
Gary E. Steinbauer (P69789)
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-4443
(313) 234-7100
*Attorneys for Defendant Getrag Transmission
Manufacturing LLC and co-counsel for
Defendant Getrag Getriebe-Und Zahnradfabrik
Hermann Hagenmeyer GmbH & Cie KG*

**MCDONALD HOPKINS LLC**
R. Jeffrey Pollock (P63957)
600 Superior Ave., East, Suite 2100
Cleveland, Ohio 44114
(216) 348-5400
*Attorney for Defendant Getrag Getriebe-Und
Zahnradfabrik Hermann Hagenmeyer GmbH &
Cie KG*

Dated:  October 30, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2008, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system and I hereby certify that I have mailed by United States

Postal Service the paper to the following:

James P. Feeney
Paul L. Nystrom
Dykema Gossett PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI 48304

Hugh R. McCombs, Jr.
Michael J. Gill
Robert E. Entwisle
Mayer Brown
71 S. Wacker Dr.
Chicago, IL 60606

R. Jeffrey Pollock
McDonald Hopkins LLC
600 Superior Ave. East
Suite 2100
Cleveland, OH 44114

        s/Scott T. Seabolt
        Scott T. Seabolt (P55890)
        Jeffrey S. Kopp (59485)
        Gary E. Steinbauer (P69789)
        Foley & Lardner LLP
One Detroit Center
500 Woodward Ave., Suite 2700
Detroit, Michigan 48226-4443
(313) 234-7100
*Attorneys for Defendant Getrag Transmission Manufacturing LLC and co-counsel for Defendant Getrag Getriebe-Und Zahnradfabrik Hermann Hagenmeyer GmbH & Cie KG*

**MCDONALD HOPKINS LLC**
R. Jeffrey Pollock (P63957)
600 Superior Ave., East, Suite 2100
Cleveland, Ohio 44114
(216) 348-5400
*Attorney for Defendant Getrag Getriebe-Und Zahnradfabrik Hermann Hagenmeyer GmbH & Cie KG*

DETR_950586.1