UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRYSLER LLC, a Delaware limited
liability company,

                Plaintiff/Counter-Defendant,          HONORABLE SEAN F. COX

v

                                              Case No. 08-14592

GETRAG TRANSMISSION
MANUFACTURING LLC, a Delaware
limited liability company, GETRAG
GETRIEBE-UND ZAHNRADFABRIK
HERMANN HAGENMEYER GMBH & CIE
KG, a German limited partnership

                Defendants/Counter-Plaintiffs.

| | |
|---|---|
| James P. Feeney (P13335)<br>Paul L. Nystrom (P57067)<br>Dykema Gossett PLLC<br>39577 Woodward Ave., Suite 300<br>Bloomfield Hills, MI 48304<br>(248) 203-0700 | Scott T. Seabolt (P55890)<br>Jeffrey S. Kopp (P59485)<br>Gary E. Steinbauer (P69789)<br>Foley & Lardner LLP<br>500 Woodward Ave., Suite 2700<br>Detroit, MI 48226-4443<br>(313) 234-7100 |
| Hugh R. McCombs, Jr.<br>Michael J. Gill<br>Robert E. Entwisle<br>Mayer Brown<br>71 S. Wacker Drive<br>Chicago, IL 60606<br>(312) 701-3757 | *Attorneys for Defendants/Counter-Plaintiffs*<br>*Getrag Transmission Manufacturing LLC and*<br>*for Getrag Getriebe-Und Zahnradfabrik*<br>*Hermann Hagenmeyer GMBH & CIE KG* |
| *Attorneys for Plaintiff/Counter-Defendant*<br>*Chrysler LLC* | |

**PLAINTIFF CHRYSLER LLC'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

STATEMENT OF QUESTIONS PRESENTED ........................................................vi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY .................. vii

INTRODUCTION .................................................................................................1

FACTUAL BACKGROUND.....................................................................................3

ARGUMENT........................................................................................................5

I.   The Merger Clauses Are Irrelevant—Chrysler May Sue In Fraud For
     Misrepresentations Contained In The Agreements ...........................................5

II.  Chrysler's Fraud Claim Is Not Based On A Promise Of Future Performance.................12

III. Chrysler's State-Of-Mind Allegations Satisfy Michigan Law ...........................14

IV.  Chrysler's Allegations Satisfy Rule 9(b).........................................................15

CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

Page

**CASES**

*Boike v. McLaren Health Care Corp.,*
    2007 WL 1932029 (Mich. Ct. App. July 3, 2007) ................................................... 15

*Bratek v. Beyond Juice, LLC,*
    2005 WL 3071750 (E.D. Pa. Nov. 14, 2005) ....................................................... 17

*Brower v. Ross Products,*
    2002 WL 484702 (S.D. Ohio Feb. 25, 2002) ....................................................... 17

*Chesterfield Exchange v. Sportsman's Warehouse,*
    572 F. Supp. 2d 856 (E.D. Mich. 2008) ............................................................ 10

*Chhina Family P'ship v. S-K Group of Motels,*
    622 S.E.2d 40 (Ga. Ct. App. 2005) .................................................................. 9

*Citibank v. Itochu Int'l Inc.,*
    2003 WL 1797847 (S.D.N.Y. Apr. 4, 2003) ...................................................... 9

*Custom Data Solutions v. Preferred Capital,*
    274 Mich. App. 239, 733 N.W.2d 102 (2006) ................................................... 10

*Elson v. Harris,*
    356 Mich. 175, 96 N.W.2d 767 (1959) ........................................................ 8, 13

*Epicentre Strategic Corp. v. Cleveland Constr.,*
    2007 WL 1017644 (E.D. Mich. Mar. 30, 2007) ................................................ 9

*FDIC v. Home Connection Mortgage,*
    2008 WL 4298488 (E.D. Mich. Sept. 18, 2008) ............................................... 16

*Foreman v. Foreman,*
    266 Mich. App. 132, 701 N.W.2d 167 (2005) ............................................. 13, 15

*Gage Products v. Henkel Corp.,*
    393 F.3d 629 (6th Cir. 2004) .......................................................................... 13

*Gloeser v. Moore,*
    284 Mich. 106, 278 N.W. 781 (1938) ....................................................... 8, 9, 10

*Hamade v. Sunoco, Inc.,*
    271 Mich. App. 145, 721 N.W.2d 233 (2006) ................................................... 10

ii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hi-Way Motor Co. v. International Harvester Co.*,
    398 Mich. 330, 247 N.W.2d 813 (1976) ........................................................................ 13

*Holcomb v. Noble*,
    69 Mich. 396, 37 N.W. 497 (1888) ............................................................................ 14

*Intuition Consolidated Group v. Dick Davis Publishing Co.*,
    2004 WL 594651 (S.D.N.Y. Mar. 25, 2004) ................................................................ 17

*Jack Mann Chevrolet v. Associates Inv. Co.*,
    125 F.2d 778 (6th Cir. 1942) .................................................................................... 8

*Jim-Bob, Inc. v. Mehling*,
    178 Mich. App. 71, 443 N.W.2d 451 (1989) ................................................................ 9

*Koch v. Bird*,
    174 Mich. 594, 140 N.W. 919 (1913) ......................................................................... 8

*Kottmyer v. Maas*,
    436 F.3d 684 (6th Cir. 2006) ................................................................................ 3, 6

*LIAC, Inc. v. Founders Ins.*,
    222 F. App'x 488 (6th Cir. 2007) ........................................................................... 7, 9

*M&D, Inc. v. McConkey*,
    231 Mich. App. 22, 585 N.W.2d 33 (1998) ............................................................ 11, 12

*Machuta v. Machuta*,
    2008 WL 2117141 (Mich. Ct. App. May 20, 2008) ........................................................ 15

*Mateo v. M/S Kiso*,
    805 F. Supp. 761 (N.D. Cal. 1991) ......................................................................... 17

*Michaels Bldg. Co. v. Ameritrust Co.*,
    848 F.2d 674 (6th Cir. 1988) ................................................................................ 16

*Novak v. Nationwide Mut. Ins.*,
    235 Mich. App. 675, 599 N.W.2d 546 (1999),
    *appeal dismissed*, 611 N.W.2d 799 (Mich. 2000) ...................................................... 15

*Plate v. Detroit Fidelity & Surety Co.*,
    229 Mich. 482, 201 N.W. 457 (1924) .................................................................... 9, 10

**TABLE OF AUTHORITIES**
(continued)

Page

*Samuel D. Begola Services v. Wild Bros.*,
   210 Mich. App. 636, 534 N.W.2d 217 (1995)......................................................................10

*Star Ins. v. United Commercial Ins.*,
   392 F. Supp. 2d 927 (E.D. Mich. 2005) .........................................................................7, 9

*T&K Fiberglass, Inc. v. Avalon & Tahoe, Inc.*,
   2007 WL 101769 (Mich. Ct. App. Jan. 16, 2007)..........................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007).............................................................................................................6

*Trustees for Michigan BAC Health Care Fund v. C.S.S. Contracting Co.*,
   2008 WL 1820879 (E.D. Mich. Apr. 22, 2008) .............................................................8

*UAW-GM Human Resource Center v. KSL Recreation Corp.*,
   228 Mich. App. 486, 579 N.W.2d 411 (1998)...................................................7, 10, 11

*United States v. Ford Motor Co.*,
   532 F.3d 496 (6th Cir. 2008) .............................................................................................16

*USF&G v. Black*,
   412 Mich. 99, 313 N.W.2d 77 (1981) ..............................................................................14

*Wilson v. Kiss*,
   751 F. Supp. 1249 (E.D. Mich. 1990) .......................................................................13, 14

*Wolfe v. A.E. Kusterer & Co.*,
   269 Mich. 424, 257 N.W. 729 (1934) .............................................................................11

**RULES**

Fed. R. Civ. P. 8......................................................................................................................16

Fed. R. Civ. P. 8(a)................................................................................................................16

Fed. R. Civ. P. 8(a)(3) ...........................................................................................................9

Fed. R. Civ. P. 9(b)...............................................................................................2, 15, 16, 17

Fed. R. Civ. P. 10(c) ..............................................................................................................6

Fed. R. Civ. P. 12(b)(6) .........................................................................................................6

iv

**TABLE OF AUTHORITIES**
**(continued)**

Page

OTHER AUTHORITIES

5A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1326 (3d ed. 2004)................6

5C C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1363 (3d ed. 2004)...............6

W. Keeton, et al., PROSSER AND KEETON ON THE LAW OF TORTS § 109 (5th ed. 1984)...............13

## STATEMENT OF QUESTIONS PRESENTED

I.      Whether the merger clauses in the parties' agreements bar a fraud claim when the complaint alleges that the defendants made representations concerning financing in the agreements themselves that were false because the defendants knew that they would seek only financing that required a guarantee from the German government.

Plaintiff says "no."

II.     Whether the fraud claim should be dismissed on the theory that it is limited to future promises when

(a)     there are allegations concerning defendants' state of mind at the time they signed the agreements, and

(b)     in any event, the complaint alleges that the defendants knowingly misrepresented their future intentions, which constitutes bad faith.

Plaintiff says "no."

III.    Whether the complaint should be dismissed for not adequately alleging the defendants' state of mind when

(a)     Michigan law provides that innocent misrepresentations are actionable when they occur in a transaction between contracting parties, and

(b)     the complaint alleges that the defendants knew that they would be seeking financing requiring a German government guarantee, which was contrary to the defendants' representations in the agreements.

Plaintiff says "no."

IV.     Whether the complaint should be dismissed for failure to comply with Rule 9(b) when it alleges the time, place, and content of the misrepresentations that defendants made in the parties' agreements.

Plaintiff says "no."

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Elson v. Harris*, 356 Mich. 175, 96 N.W.2d 767 (1959)

*Gloeser v. Moore*, 284 Mich. 106, 278 N.W. 781 (1938)

*Plate v. Detroit Fidelity & Surety Co.*, 229 Mich. 482, 201 N.W. 457 (1924)

*Samuel D. Begola Services v. Wild Bros.*, 210 Mich. App. 636, 534 N.W.2d 217 (1995)

*Custom Data Solutions v. Preferred Capital*, 274 Mich. App. 239, 733 N.W.2d 102 (2006)

*M&D, Inc. v. McConkey*, 231 Mich. App. 22, 585 N.W.2d 33 (1998)

*USF&G v. Black*, 412 Mich. 99, 313 N.W.2d 77 (1981)

*Gage Products v. Henkel Corp.*, 393 F.3d 629 (6th Cir. 2004)

*Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674 (6th Cir. 1988)

# INTRODUCTION [1]

This case arises out of several March 2008 agreements between Chrysler and the defendants—Getrag Transmission Manufacturing LLC ("GG LLC") and Getrag Getriebe-und Zahnradfabrik Hermann Hagenmeyer GmbH & Cie KG ("Getrag")—to build and operate a plant in Indiana that would manufacture dual clutch transmissions. The defendants agreed to obtain financing for the project, but they did not do so, and Chrysler learned after signing the agreements that the defendants had intended all along to seek only financing that would require a guarantee from the German government. Defendants sought that financing even though they represented in the agreements that financing would not require any governmental approval, and even though the defendants also knew that financing guaranteed by the German government would require Chrysler to take on significant, additional obligations not included in the parties' March 2008 agreements.

The defendants have not moved to dismiss Chrysler's breach of contract claims. Their motion seeks only to dismiss Chrysler's fraud claim on various grounds, all of which are meritless. The defendants' principal argument is that the fraud claim is barred by the

---

[1] Simultaneously with the filing of this response, Chrysler is moving to amend its complaint to clarify the basis for its fraud claim. Among other things, the fraud claims in the proposed amended complaint are not based on the allegation that defendants represented orally that "financing would not be a problem," and this brief does not discuss that allegation. Nonetheless, for the reasons explained below, other allegations in the existing complaint adequately allege a fraud claim and thus require denial of defendants' motion to dismiss. But if there is any doubt, it is doubly clear under the proposed amended complaint that Chrysler has stated a claim for fraud.

Both this response and the motion for leave to file an amended complaint are being filed only as to defendant Getrag Getriebe-und Zahnradfabrik Hermann Hagenmeyer GmbH & Cie KG. The other defendant, Getrag Transmission Manufacturing LLC, filed for bankruptcy on November 17, 2008, and the claims against it are automatically stayed pursuant to 11 U.S.C. § 362(a).

agreements' merger clauses.  But a merger clause bars only *prior* agreements and understandings that were *not included* in the parties' contract; it does not affect claims based on misrepresentations *contained in* the parties' agreements  And Michigan law has long recognized that a fraud claim may be based on a misrepresentation—made either knowingly or innocently—contained within a contract; in that circumstance, the plaintiff may pursue the alternatives of recovering damages or rescinding the contract.

Defendants' remaining arguments are also flawed.  Their argument that the fraud claim concerns only future promises ignores the allegations that the defendants, in the agreements, made representations that they knew were false.  Those are allegations of existing facts—the defendants' knowledge at the time they signed the agreements—and, besides, statements about future performance are actionable in fraud if the statements were made in bad faith without intention of performance.  The argument that the complaint is deficient because it does not allege scienter is wrong for two reasons.  As just noted, Michigan recognizes a cause of action for *innocent* misrepresentations made in a transaction between the plaintiff and the defendant.  In any event, the complaint does allege scienter:  it alleges that the defendants knowingly pursued only government-guaranteed financing even though they had represented that financing would not depend on governmental approval, and they knew that any such financing would substantially alter Chrysler's obligations under the agreements.  Finally, defendants assert that the complaint violates Rule 9(b) because it does not allege with particularity the time, place, and content of the misrepresentations.  However, it is well settled that Rule 9(b) is satisfied when, as here, the complaint alleges that the misrepresentations are found in identified written documents.

## FACTUAL BACKGROUND

On a motion to dismiss, this Court "must accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). Applying that standard, the complaint alleges the following facts that are pertinent to the motion to dismiss:

In February 2007, Chrysler and Getrag signed a Memorandum of Understanding to consider the joint development of a manufacturing plant to build dual clutch transmissions. Compl. ¶ 1. Negotiations for the project continued for more than a year, and on March 11, 2008, Chrysler, Getrag, and GG LLC signed several agreements providing for the construction and operation of a plant in Indiana, including a Financing Options Agreement ("FOA") and a Transmission Supply Agreement ("TSA"). *Id.* ¶ 3.

The agreements required the defendants to obtain up to $300 million in debt financing for the project (*id.* ¶ 4), and obligated the defendants, within 90 days after March 11, 2008 (but with a "target date" of May 15, 2008), to use "'good faith efforts to obtain, from banks or other financial institutions, senior debt financing'" (*id.* ¶ 31, quoting TSA § 3.7(a)) and use "'good faith efforts to take, or cause to be taken, all actions and do, or cause to be done, all things necessary, proper or advisable to arrange for the Debt Financing'" (*id.* ¶ 28, quoting FOA § 2.1). The defendants specifically represented that "'[n]o governmental action or consent, authorization or approval is required to be taken, given or obtained, as the case may be, by or from any governmental authority . . . to authorize the execution, delivery and performance by GG LLC of this Agreement.'" *Id.* ¶ 31 (quoting TSA § 23.2(b)). In addition, the defendants represented that, as of March 11, 2008, Getrag "'has not received any information from its current potential

3

sources of the Debt Financing that would cause GETRAG to believe that GG LLC will be unable to obtain a Firm Commitment for the Debt Financing for the Project.'"  *Id.* ¶ 26 (quoting FOA § 4.10).

Those representations by the defendants were not true.  In fact, before the agreements were signed, the defendants "knew that they could not obtain Debt Financing within the time frame called for" by the agreements (90 days), and "also knew that unless Chrysler was willing to assume substantial obligations beyond those imposed on it by the definitive transaction agreements, they would be unable to obtain Debt Financing within any timeframe." *Id.* ¶ 5.  The defendants knew, prior to March 2008, that in order to obtain financing, they would have to seek—and they intended to seek—an Export Bank guarantee from the German government to insure all or part of the defendants' repayment of the debt financing. *Id.* ¶¶ 33-34.

But the defendants did not tell Chrysler that they were seeking a German government guarantee until April 2008—a month after the agreements were signed—and they did not tell Chrysler until June 2008 that the governmental guarantee "was a condition precedent" to defendants' ability to obtain any financing at all.  *Id.* ¶¶ 33, 35-36.  Indeed, before the parties signed the FOA and TSA, "Getrag took affirmative steps to prevent Chrysler from learning of the intended Export Bank guarantee by refusing to provide term sheets and other information concerning its financing efforts to Chrysler, and refusing to allow Chrysler to meet with its potential lenders." *Id.* ¶ 35; see also *id.* ¶ 29.

Transactions involving German government guarantees typically require extensive and significant security for repayment, and arranging financing backed by the German government's guarantee would necessarily have substantially altered Chrysler's obligations under the FOA and

the TSA.  Compl. ¶ 37.  Among other things, the Export Bank and the potential lenders insisted that Chrysler establish an upfront escrow of more than $300 million; that the machinery and equipment to be acquired by Chrysler under the FOA and TSA be owned by a newly established special purpose entity, not Chrysler; and that additional conditions be imposed on Chrysler's rights under the TSA to use and operate the plant if Getrag failed or refused to perform.  *Id.*  Not only do the FOA and TSA not impose any of these conditions, but the special purpose entity requirement "cannot be met given the structure of the transaction" between Chrysler and the defendants that is embodied in the FOA and the TSA.  *Id.* ¶ 38.  In short, "the requirements of the Export Bank Guarantee are inconsistent with the Target Terms for the Debt Financing reflected in Exhibit A-1 to the FOA."  *Id.* ¶ 36.  The defendants knew or should have known that these conditions would be required if the German government guaranteed repayment of the debt.  *Id.* ¶ 40.

Getrag and GG LLC have not obtained financing for the project—the only financing proposals they presented to Chrysler were conditioned on a German government guarantee.  *Id.* ¶¶ 33, 40.  Chrysler alleges that the defendants' misrepresentations about financing were false; that defendants benefited from their misrepresentations; and that Chrysler was damaged as a result of its reasonable reliance on the defendants' false representations.  *Id.* ¶¶ 53, 56-57.

## ARGUMENT

I.   **The Merger Clauses Are Irrelevant—Chrysler May Sue In Fraud For Misrepresentations Contained In The Agreements.**

Defendants construe the complaint as alleging a fraud claim based only on their representation that "'financing [for the project] would not be a problem'" (Def. Br. 1, quoting Compl. ¶ 55), and that this claim is barred by the agreements' merger clauses and the parol

evidence rule.[2]  Def. Br. 10-14.  But defendants have ignored the rest of the allegations in the complaint, which are realleged and incorporated by reference in the fraud claim.  Compl. ¶ 53.

Incorporating allegations by reference is expressly permitted by Fed. R. Civ. P. 10(c), and is "extremely common"—it "eliminates any unnecessary repetition of the transactions and events upon which the pleader relies."  5A C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1326, at 426-27 (3d ed. 2004)   And it is well settled that in considering a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint *in its entirety*," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (emphasis added); "the pleading will be read *as a whole*, and will be viewed broadly and liberally."  5C C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1363, at 116 (3d ed. 2004) (emphasis added).  See also *Kottmyer*, 436 F.3d at 688 (in deciding a Rule 12(b)(6) motion, "a district court must accept as true *all* the allegations contained in the complaint") (emphasis added).

The allegations in the complaint summarized above set forth a fraud theory that defendants do not discuss in their motion to dismiss:  that defendants knew—before signing the FOA and the TSA—that they could only obtain financing if they sought an Export Bank guarantee from the German government; that defendants knew this would substantially alter Chrysler's obligations under the FOA and the TSA; and that defendants did not tell Chrysler any of this until after the FOA and the TSA were signed.  Compl. ¶¶ 5, 33-40.  Moreover,

---

[2]    The TSA provides that the agreements signed on March 11, 2008 together "constitute the entire agreement, and supersede all prior agreements and understandings, both written and oral, between the Parties with respect to the matters contemplated hereby . . . ."  TSA § 23.15.  The FOA similarly provides that the agreements signed on March 11, 2008 "set forth the entire agreement between the Parties related to the subject matter hereof, and supersede all prior agreements and understandings, both written and oral, between the Parties with respect thereto . . . ."  FOA § 4.4.

defendants' pre-signing knowledge that they would be seeking a guarantee from the German government and their knowledge about the effect this would have on the substance of Chrysler's obligations meant that key representations by the defendants in the agreements were false—in particular, defendants' representations that no governmental approval was necessary, that they had no information indicating that they would not be able to obtain financing on acceptable terms, and that they would use good faith efforts to obtain acceptable financing within the required 90-day time frame. *Id.* ¶¶ 5, 26, 28, 31.

For several reasons, a fraud claim based on these allegations is not barred by the agreements' merger clauses:

1.      Most importantly, the merger clauses are irrelevant to the misrepresentation allegations just summarized. Under Michigan law, a merger clause in a contract bars "'only'" any "'collateral agreements or understandings between two parties that are not expressed in a written contract.'" *LIAC, Inc. v. Founders Ins.*, 222 F. App'x 488, 493 (6th Cir. 2007) (quoting *Star Ins. v. United Commercial Ins.*, 392 F. Supp. 2d 927, 928-29 (E.D. Mich. 2005)). A merger clause nullifies "agreement[s] *not included* in the . . . agreement." *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich. App. 486, 504, 579 N.W.2d 411 (1998) (emphasis added). But the allegations just summarized do not allege "'collateral agreements or understandings'" that were "not included" in the signed contract. Rather, the complaint alleges that the defendants made false representations *in* the parties' written agreements, and that those contractual misrepresentations caused Chrysler to sign the agreements. Compl. ¶¶ 5, 26-40. Because the misrepresentations were *included* in the parties' agreement, the merger clauses simply do not apply.

Alleged misrepresentations within a contract provide a valid basis for a fraud claim, which may be pursued regardless of whether the contract contains a merger clause. For example, in *Elson v. Harris*, 356 Mich. 175, 96 N.W.2d 767 (1959), the defendant-seller represented in the contract that "'no leaks are evident in the roof'" of the property. *Id.* at 177. But shortly after the plaintiffs took possession, they "discovered dismaying evidence of long standing leakage of rainwater," and they brought a fraud claim. *Id.* The Supreme Court upheld the jury's damages verdict, holding that the plaintiffs "had a right to affirm" the contract and assert a fraud claim for damages instead of seeking rescission. *Id.* at 178. See also *Koch v. Bird*, 174 Mich. 594, 598, 140 N.W. 919 (1913) (under Michigan's innocent representation doctrine, the defendants were "chargeable with fraud" when the sales contract honestly but mistakenly stated that the land being sold comprised 110 acres, when it was actually 104-1/2 acres).

Indeed, the Michigan Supreme Court has long held that a plaintiff who was defrauded in connection with a contract had a right either "to rescind the contract and sue to recover the value of what she had paid . . . [o]r, she had a right to retain what she had received and sue to recover damages for the fraud." *Gloeser v. Moore*, 284 Mich. 106, 118, 278 N.W. 781 (1938). See also, *e.g.*, *Trustees for Michigan BAC Health Care Fund v. C.S.S. Contracting Co.*, 2008 WL 1820879, at *8 (E.D. Mich. Apr. 22, 2008) (Cox, J.) ("'When a party is defrauded by means of a contract, he may rescind and ask to be placed in statu quo, or he may affirm and sue for damages resulting from the fraud'") (quoting *Jack Mann Chevrolet v. Associates Inv. Co.*, 125 F.2d 778, 783 (6th Cir. 1942)).[3]

---

[3]     Under modern pleading rules, a plaintiff's complaint may seek the remedies of rescission and damages in the alternative. Fed. R. Civ. P. 8(a)(3); *Epicentre Strategic Corp. v. Cleveland*

Whichever option the plaintiff chooses, a contractual merger clause does not bar the fraud claim: "'It has long been settled that such provisions in a contract do not prevent showing the contract is void by reason of false and fraudulent representations in its procurement.'" *Gloeser*, 284 Mich. at 118 (quoting *Plate v. Detroit Fidelity & Surety Co.*, 229 Mich. 482, 487, 201 N.W. 457 (1924)).[4]  See also *Chhina Family P'ship v. S-K Group of Motels*, 622 S.E.2d 40, 43 (Ga. Ct. App. 2005) ("'no alleged merger clause' could bar a fraud claim based upon misrepresentations made in the contract itself"); *Citibank v. Itochu Int'l Inc.*, 2003 WL 1797847, at *1 (S.D.N.Y. Apr. 4, 2003) (a merger clause bars only "representations outside of the Agreement," not a fraud claim based on false and misleading representations in an agreement).  We are not aware of any Michigan case holding that a merger clause bars a fraud claim based, as here, on misrepresentations contained within the agreement.

2.     Moreover, a merger clause does not bar evidence of "'representations of fact made by one party to another to induce that party to enter into a contract.'" *LIAC*, 222 F. App'x at 493 (quoting *Star Ins.*, 392 F. Supp. 2d at 928).  Even the cases that defendants cite and rely on recognize that "extrinsic evidence may be presented to attack the validity of the contract as a whole," and that "[p]arol evidence is generally admissible to demonstrate fraud, which, if proved, would render the contract voidable." *Hamade v. Sunoco, Inc.*, 271 Mich. App. 145, 167,

_____

*Constr.*, 2007 WL 1017644, at *11 (E.D. Mich. Mar. 30, 2007); see also *Jim-Bob, Inc. v. Mehling*, 178 Mich. App. 71, 91-93, 443 N.W.2d 451 (1989).

[4]     The merger clause in *Gloeser* stated that the defendant "'will not be bound by representations other than those printed herein.'" 284 Mich. at 112. The agreement in *Plate* provided that it "'contains the entire contract'" and that "'no conditions, agreements, or representations, either written or verbal, other than those printed herein, shall be binding on said company.'"  229 Mich. at 486.  In both cases, the Michigan Supreme Court held that the plaintiffs had valid fraud claims notwithstanding the merger clauses.

169, 721 N.W.2d 233 (2006) (citing *UAW-GM*, 228 Mich. App. at 503).  See also *Custom Data Solutions v. Preferred Capital*, 274 Mich. App. 239, 242-44, 733 N.W.2d 102 (2006) (merger clause did not defeat plaintiff's claim that defendant fraudulently induced it to enter into contract); *Gloeser*, 284 Mich. at 112, 117-18 (same); *Plate*, 229 Mich. at 486-88 (same).

Thus, "[e]ven in the face of an integration clause, . . . [f]raud in the inducement renders the contract voidable at the election of the defrauded party, and also authorizes damages flowing from reasonable reliance." *Chesterfield Exchange v. Sportsman's Warehouse*, 572 F. Supp. 2d 856, 865 (E.D. Mich. 2008).  Fraud in the inducement exists, for instance, when one party relied on the other party's adherence to certain contractual terms, but the other party "had no intention of abiding by [those] terms." *Samuel D. Begola Services v. Wild Bros.*, 210 Mich. App. 636, 640, 534 N.W.2d 217 (1995).

Accordingly, wholly apart from the fact that a merger clause does not even come into play when a fraud claim is based on misrepresentations *within* a contract, the fraudulent inducement doctrine provides an independent reason for denial of defendants' motion to dismiss. Chrysler has alleged that it entered into the agreements because of the defendants' false representations in those agreements concerning financing—specifically, defendants' misrepresentations that no governmental approvals would be needed, that defendants had no information to cause them to believe that they could not obtain acceptable financing, and that defendants would engage in good faith efforts to obtain acceptable financing.  Compl. ¶¶ 5, 26-40.  If Chrysler had known the truth that defendants concealed until after the agreements were signed in March 2008—that defendants would seek only financing backed by an Export Bank guarantee from the German government, and that any such guarantee would be accompanied by

10

the lenders' insistance that Chrysler take on significantly greater obligations—Chrysler would not have signed the agreements. That is more than enough to allege fraudulent inducement, which is actionable under Michigan law regardless of the agreements' merger clauses.

3.      In addition, the complaint alleges facts constituting "'[s]ilent fraud,' also known as fraud by nondisclosure or fraudulent concealment." *M&D, Inc. v. McConkey*, 231 Mich. App. 22, 28, 585 N.W.2d 33 (1998). "'[T]he suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud.'" *Id.* at 28-29. To establish silent fraud, "a plaintiff must show that some type of representation that was false or misleading was made and that there was a legal or equitable duty of disclosure." *Id.* at 31. The representation must have the effect of "'conceal[ing] or suppress[ing] a material fact.'" *Id.* at 31 (quoting *Wolfe v. A.E. Kusterer & Co.*, 269 Mich. 424, 428, 257 N.W. 729 (1934)). There is a "legal" duty to disclose when there is a "contractual" duty to disclose. *Id.* at 33. A contract's merger clause does not bar a silent fraud claim unless the representation at issue constituted a prior understanding or agreement that was not included in the contract. See *UAW*, 228 Mich. App. at 504.

Here, the defendants had represented in the agreements that (a) government approval would *not* be required in order to obtain financing, (b) they had no information indicating that they would not be able to obtain acceptable financing, and (c) they would use good faith efforts to obtain acceptable financing. TSA §§ 3.7(a), 23.2(b); FOA §§ 2.1, 4.10. Yet the defendants concealed the fact that they were seeking only financing that came with a guarantee from the German government: "Chrysler had no choice but to rely on Getrag's . . . contractual representations . . . because Getrag refused to provide term sheets and other information

concerning its financing efforts to Chrysler, and refused to allow Chrysler to talk with the banks from which it was seeking financing."  Compl. ¶ 29; see also *id.* ¶¶ 33-34 (although defendants "intended to seek and knew the necessity of the Export Bank Guarantee long before they executed the FOA and TSA," it was not until June 2008 that "Chrysler first learned that the Export Bank Guarantee was a condition precedent to Getrag and GG LLC obtaining the Debt Financing").

That the defendants prevented Chrysler from learning that they were seeking financing that would require governmental approval *and* dramatically change Chrysler's obligations with respect to the project, unquestionably constituted concealment or suppression of the fact that the defendants' contractual representations in sections 23.2(b) and 4.10 were false.  The gist of a silent fraud claim "'is fraudulently producing a false impression upon the mind of the other party,'" *M&D*, 231 Mich. App. at 31, and that was certainly the case with respect to defendants' failure to tell Chrysler that they were seeking only financing that was guaranteed by the German government.

**II.      Chrysler's Fraud Claim Is Not Based On A Promise Of Future Performance.**

The defendants' second argument for dismissal of the fraud claim is that their statements that "financing would not be a problem" and their statements in the "comfort letter" concern future promises that are not actionable as fraud.  Def. Br. 14-15.  There are two problems with this argument.

*First*, as already explained, the complaint alleges that the defendants made false representations in the agreements, which defendants' brief does not discuss.  Those allegations do not concern future promises at all; they are allegations concerning *existing* facts:  because the

defendants knew before they signed the agreements that they would be pursuing only financing that required a guarantee from the German government (Compl. ¶¶ 33-36), their representations in sections 3.7(a) and 23.2(b) of the TSA and sections 2.1 and 4.10 of the FOA were untrue at the time the defendants made them.  See, *e.g.*, *Elson*, 356 Mich. at 177-82 (affirming damages verdict for fraud claim based on false misrepresentation in the contract); W. Keeton, et al., Prosser and Keeton on The Law of Torts § 109, at 762 (5th ed. 1984) ("'The state of a man's mind . . . is as much a fact as the state of his digestion'").

*Second*, it is well settled that even if representations are "promises of future action, . . . they nevertheless are actionable if they were 'made in bad faith without intention of performance.'"  *Gage Products v. Henkel Corp.*, 393 F.3d 629, 645 (6th Cir. 2004) (quoting *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 338, 247 N.W.2d 813 (1976)).  This bad faith exception need not be pled specifically in the complaint.  *Wilson v. Kiss*, 751 F. Supp. 1249, 1256 (E.D. Mich. 1990).  Chrysler has alleged that defendants knew, before signing the agreements, that they would not perform in accordance with their contractual representations about financing, because they knew that they would seek only financing that was guaranteed by the German government.  This easily satisfies the bad faith exception.  See *Foreman v. Foreman*, 266 Mich. App. 132, 146-48, 701 N.W.2d 167 (2005) (upholding jury verdict for plaintiff where defendant misrepresented his future intentions concerning his business and property); *Gage Products*, 393 F.3d at 644-47 (reversing grant of summary judgment on fraud claim because there was evidence that defendant promised in bad faith to pay future price increases); *Wilson*, 751 F. Supp. at 1255-56 (plaintiff stated a fraud claim by alleging that the defendant had no intention of meeting its promises about plaintiff's future employment).

### III.   Chrysler's State-Of-Mind Allegations Satisfy Michigan Law.

Defendants also argue that (a) it is "beyond dispute" that Michigan requires a plaintiff to allege that the defendants "knew" that a representation was false or acted recklessly in making the statement in question, and (b) the complaint has no such allegations.  Def. Br. 15-16. Defendants are wrong on both points.

To begin with, under Michigan law, a plaintiff may recover for *innocent* misrepresentations "made in connection with making a contract." *USF&G v. Black*, 412 Mich. 99, 118, 313 N.W.2d 77 (1981).

> "[T]he doctrine is settled here, by a long line of cases, that if there was in fact a misrepresentation, *though made innocently*, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity."

*Id.* at 115 (quoting *Holcomb v. Noble*, 69 Mich. 396, 399, 37 N.W. 497 (1888) (Morse, J., concurring)) (emphasis added).   The innocent misrepresentation doctrine applies when misrepresentations occur "in a transaction between the contracting parties." *Id.* at 117.  Thus,

> "where an action is brought to recover for false and fraudulent misrepresentations made by one party to another (1) in a transaction between them, (2) any representations which are false in fact (3) and actually deceive the other, and (4) are relied on by him to his damage, are actionable, *irrespective of whether the person making them acted in good faith in making them*, (5) where the loss of the party deceived inures to the benefit of the other."

*Id.* at 116 (emphasis added).   In short, Michigan law does not require allegations that the defendants knowingly or recklessly made a false representation.

But even if it did, Chrysler has made those allegations.  The complaint alleges:

- "Contrary to their representations . . . in the definitive transaction agreements, Getrag and GG LLC *knew* that they could not obtain Debt Financing within the time frame called for by the . . . agreements" and "*knew* that unless Chrysler was willing to assume substantial

obligations beyond those imposed on it by the . . . agreements, they would be unable to obtain Debt Financing within any timeframe" (Compl. ¶ 5);

- "Getrag and GG LLC intended to seek *and knew* the necessity of the Export Bank Guarantee long before they executed the FOA and TSA" (*id.* ¶ 34), even though "[t]he requirement of an Export Bank Guarantee . . . was *directly contrary* to Getrag's representations . . . in FOA Section 4.10 regarding the availability of Debt Financing" (*id.* ¶ 36); and

- "Prior to the execution of the FOA and TSA, Getrag took *affirmative steps to prevent Chrysler from learning* of the intended Export Bank guarantee by refusing to provide term sheets and other information concerning its financing efforts to Chrysler, and refusing to allow Chrysler to meet with its potential lenders" (*id.* ¶ 35).

(Emphasis added.)   Even though not required under Michigan law, these are allegations of knowing representations—which defendants ignore in their brief.[5]

## IV.   Chrysler's Allegations Satisfy Rule 9(b).

Defendants' last argument is that the fraud allegations are not stated with the particularity required by Fed. R. Civ. P. 9(b) because the allegations do not state the time, place, and content of the misrepresentations.  Def. Br. 16-17.  As with their earlier arguments, defendants do not mention the allegations concerning the German government's guarantee.

The Sixth Circuit has stressed that "Rule 9(b) should be interpreted in harmony with Rule

---

[5]    Instead of dealing with the allegations quoted in the text, defendants point to only a single allegation elsewhere in the complaint:  that they "knew or should have known that the Export Bank would place . . . extraordinary conditions upon the Debt Financing."  Compl. ¶ 40 (quoted at Def. Br. 16).  But one of the defendants' own cases states that one of the elements of a standard fraud claim is that the "defendant knew, *or should have known*, that the representation was false when making it."  *Foreman*, 266 Mich. App. at 141 (emphasis added).  Many other Michigan cases use the same "knew or should have known" formulation in stating the scienter element for a fraud claim.  *E.g.*, *Novak v. Nationwide Mut. Ins.*, 235 Mich. App. 675, 688, 599 N.W.2d 546 (1999), *appeal dismissed*, 611 N.W.2d 799 (Mich. 2000); *Machuta v. Machuta*, 2008 WL 2117141, at *6 (Mich. Ct. App. May 20, 2008); *Boike v. McLaren Health Care Corp.*, 2007 WL 1932029, at *7 (Mich. Ct. App. July 3, 2007); *T&K Fiberglass, Inc. v. Avalon & Tahoe, Inc.*, 2007 WL 101769, at *3 (Mich. Ct. App. Jan. 16, 2007).  Accordingly, the allegation in paragraph 40 satisfies Michigan law with respect to standard fraud claims, in addition to obviously being sufficient under the innocent misrepresentation doctrine.

15

8's statement that a complaint must only provide 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'" *United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)).   Thus, Rule 9(b) "should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." *Id.* (quoting *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 678 (6th Cir. 1988)). Accordingly, a complaint satisfies the particularity requirement of Rule 9(b) as long as it "provide[s] a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg.*, 848 F.2d at 679.

The complaint here satisfies these principles.  As discussed earlier, the defendants made representations in the agreements that were untrue because of the defendants' decision to seek only financing that would require a governmental guarantee.  The time, place, and content of those misrepresentations are obvious from reading the complaint:  the misrepresentations were made on March 11, 2008, the date the TSA and the FOA were signed; the place was in the agreements themselves; and the content was the text of the agreements' paragraphs cited in the complaint.

Alleging a misrepresentation in a written document satisfies Rule 9(b).  See *Michaels Bldg.*, 848 F.2d at 679 (a complaint adequately alleged the time, place, and content of the misrepresentations when, *inter alia*, "the plaintiffs identified the fraudulent loan documents and attached copies of them to the complaint"); *FDIC v. Home Connection Mortgage*, 2008 WL 4298488, at *5 (E.D. Mich. Sept. 18, 2008) (a complaint alleged fraud "with the requisite particularity" because it alleged "that material misrepresentations were made on the HUD-1 [Settlement Statement] with respect to the loans at issue which were false [and] that [defendant]

knew or should have known they were false"); *Brower v. Ross Products*, 2002 WL 484702, at *4-5 (S.D. Ohio Feb. 25, 2002) (a fraud claim premised on representations contained in the defendant's written leave-of-absence policy and a letter sent by the defendant satisfy the particularity requirement of Rule 9(b)). And even if particularized allegations are not set forth in the fraud claim itself, allegations elsewhere in the complaint that are incorporated by reference suffice to satisfy Rule 9(b). See *Bratek v. Beyond Juice, LLC*, 2005 WL 3071750, at *7 (E.D. Pa. Nov. 14, 2005); *Intuition Consolidated Group v. Dick Davis Publishing Co.*, 2004 WL 594651, at *3 (S.D.N.Y. Mar. 25, 2004); *Mateo v. M/S Kiso*, 805 F. Supp. 761, 783 (N.D. Cal. 1991); see also p. 6, *supra*.

## CONCLUSION

For the reasons stated, the motion to dismiss count III of Chrysler's complaint should be denied.

Respectfully submitted,

s/Paul L. Nystrom
Dykema Gossett PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Phone: (248) 203-0700
E-mail: pnystrom@dykema.com
(P57067)

Hugh R. McCombs, Jr.
Michael J. Gill
Robert E. Entwisle
Mayer Brown
71 S. Wacker Drive
Chicago, IL 60606
(312) 701-3757

*Attorneys for Plaintiff/Counter-Defendant*
Date: November 20, 2008
*Chrysler LLC*

## PROOF OF SERVICE

I HEREBY CERTIFY that on this 20th day of November, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

> Scott T. Seabolt
> Jeffrey S. Kopp
> Gary E. Steinbauer
> Foley & Lardner LLP
> 500 Woodward Ave., Suite 2700
> Detroit, MI 48226-4443

s/Paul L. Nystrom
Dykema Gossett PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Phone: (248) 203-0700
E-mail: pnystrom@dykema.com
(P57067)

*Attorneys for Plaintiff/Counter-Defendant*
*Chrysler LLC*

18